UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN R. HUCKABA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:13-cv-0586-SMY-PMF |
| ) | |
| CSX TRANSPORTATION, INC., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on CSX Transportation, Inc.'s Renewed Motion for Judgment as a Matter of Law or in the Alternative, Motion for New Trial. (Doc. 70). Plaintiff filed a one count Complaint under FELA on June 18, 2013. (Doc. 2). An eight-member jury was impaneled, and a three day jury trial occurred October 20, 2014 through October 22, 2014. On October 22, 2014, the jury returned a unanimous verdict in favor of Plaintiff in the amount of $355,000.00 which was reduced by 33% for comparative fault. Judgment was entered on the verdict on October 29, 2014. Defendant has filed a Motion for Judgment as a Matter of Law or in the Alternative, Motion for New Trial, (Doc. 70) and Plaintiff filed a response in opposition to the motion. (Doc. 72).

Judgment as a matter of law may be entered where "there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party on [an] issue." Fed.R.Civ.P. 50. The Court must, after reviewing the record and drawing all reasonable inferences in the light most favorable to Plaintiff, determine whether the verdict is supported by sufficient evidence. *Kossman v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 211 F.3d 1031, 1036 (7th Cir. 2000). In determining whether the evidence presented at trial is sufficient to withstand a motion for judgment as a matter of law, the district court is not free to weigh the parties' evidence or to pass

1

on the credibility of witnesses or to substitute its judgment of the facts for that of the jury. *Rivera v. Nash*, 1997 WL 570760, at *1 (N.D. Ill. Sept. 9, 1997). The Court will not overturn a jury's verdict "[a]s long as there is a reasonable basis in the record to support it." *Robinson v. Burlington Northern R.R.*, 131 F.3d 648, 656 (7th Cir.1997). "A trial court should overturn a verdict only where the evidence supports but one conclusion—the conclusion not drawn by the jury." *Ryl–Kuchar v. Care Centers, Inc.*, 565 F.3d 1027, 1030 (7th Cir.2009). This is obviously a difficult standard to meet. A jury verdict can be set aside "[o]nly when there is a complete absence of probative facts to support the conclusion reached ...." *Harbin v. Burlington Northern R. Co.*, 921 F.2d 129, 131 (7th Cir.1990).

Defendant asserts that it is entitled to judgment as a matter of law for a number of reasons: (1) there was no evidence that Plaintiff's injury was caused by its negligence; (2) there is no evidence that Defendant breached its duty to provide a reasonably safe workplace; (3) there is no evidence that Plaintiff's injury was foreseeable; and (4) Plaintiff is not entitled to lost wages past the date of his voluntary retirement on August 31, 2011.

FELA provides a federal tort remedy for railroad employees injured on the job. See *Williams v. Nat'l R. Passenger Corp.*, 161 F.3d 1059, 1061 (7th Cir.1998). Unlike worker's compensation statutes, FELA requires plaintiffs to prove negligence. *See id*. However, the Supreme Court has held that the negligence standard is relaxed in FELA cases and a plaintiff, in order to get his case to the jury, need only produce evidence which demonstrates that the "'employer['s] negligence played any part, even the slightest, in producing the injury.'" *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994). A plaintiff, therefore, carries a lighter burden in a FELA action than in an ordinary negligence case. *See Harbin v. Burlington Northern Ry. Co*., 921 F.2d 129, 132 (7th Cir.1990) (noting examples of FELA actions submitted

to jury based only upon "evidence scarcely more substantial than pigeon bone broth"). Furthermore, courts "have interpreted [FELA] liberally in light of its humanitarian purposes." *Williams*, 161 F.3d at 1061.

Defendant argues that no evidence was offered that a three man lift of the generator was unsafe. However, in his Order Denying Defendant's Motion for Summary Judgment, Judge Regan held that;

> Plaintiff's testimony that he thought three men would be enough to lift the generator, that he believed a three-man lift was safe, or that he did not believe he needed mechanical assistance when they made the plan to lift the generator, does not render CSX's conduct non-negligent. Plaintiff's beliefs do not equate to the legal standard under FELA or set the bar for satisfying CSX's duty under FELA.

"Circumstantial evidence is sufficient to establish FELA liability, and … a jury can make reasonable inferences based on that circumstantial evidence even where conflicting inferences are also appropriate and no direct evidence establishes which inference is correct." *Lynch v. Ne. Reg'l Commuter R.R. Corp.*, 700 F.3d 906, 917 (7th Cir. 2012).

In the case at bar, Plaintiff provided evidence at trial that Defendant sent employee Wineinger to the Marshall facility to pick up a generator. (Wineinger Depo, p. 20). Wineinger drove to the Marshall facility in one of Defendant's trucks to pick up the generator. (Id., pp. 21-22). Plaintiff and Tony Ogle, a backhoe operator, were the only other employees at the Marshall facility when Wineinger arrived to pick up the generator. (Ogle Depo., p. 9).

The generator weighed 225 pounds and was the largest that Plaintiff used while working for Defendant, and Defendant's investigation concluded it was heavier than most generators it used. (Pl. Ex. 4, p. 8). Although Defendant owned and used other types of generators, the 225 pound generator at issue was the only generator available. (Wineinger Depo., pp. 20-21). The bed of Defendant's high rail truck was almost three feet off the ground. (Pl. Ex. 4, p.8). Despite

the height of the truck's bed and the generator's size and weight, Defendant did not provide any equipment to help get the generator into the truck. Such devices were available, but apparently not at Marshall. In addition, the high rail truck did not have a lift, pole, or other equipment to lift the generator. (Wineinger, p. 22-24, p. 31 and Ogle, pp. 27-29). Defendant's own investigative team later used a knuckle boom to load the generator into the actual vehicle used on the day in question. (Ex. 4, p. 8). As a result of the lack of mechanical assistance, Defendant required Plaintiff, Wineinger, and Ogle to lift the generator into the high rail vehicle. Plaintiff testified that he did not lift generators on a regular basis. Defendant provided Plaintiff no information concerning the weight of the generator. (Ogle,3, p. 25 and Wineinger, p. 27).

The record and reasonable inferences allowed the jury to reasonably conclude that the Defendant was negligent in failing to provide equipment to move the generator, in requiring Plaintiff to manually lift the generator, in failing to instruct Plaintiff on how to lift a 225 pound generator, in failing to warn Plaintiff of the weight of the generator, and in failing to provide a reasonably safe place to work in those various ways. See *Heater v. Chesapeake & O. Ry. Co.*, 497 F.2d 1243, 1247 (7th Cir. 1974) (jury could reasonably find the railroad was negligent in "failing to use a mechanical crane or, at least, in failing to assign more men to the task."). Under established standards, there was sufficient evidence presented at trial to permit the jury to reach the conclusion it did on these issues.

The next issue is whether there was sufficient evidence for the jury to conclude that the injury was foreseeable. "Where the tortfeasor is liable for death or injuries in producing which his negligence played any part, even the slightest, such a tortfeasor must compensate his victim for even the improbable or unexpectedly severe consequences of his wrongful act." *Gallick v. Baltimore & O. R. Co.*, 372 U.S. 108, 120-21 (1963). A railroad defendant owes a duty to act

reasonably not only given the existing conditions, but anticipated conditions as well. *McDonald v. Northeast Illinois Regional*, 249 F.Supp.1051, 1055 (N.D.Ill. 2003).

In this case, there is sufficient evidence to support an inference of foreseeability. Defendant was aware of the bad weather on February 3, 2011, resulting from the severe ice and snow storm which had swept through the area prior to the incident. (Mathews Depo., pp. 14- 16). With power outages, it was foreseeable that generators would be needed.  At the time of the incident, Defendant knew that the only employees at the Marshall facility were Plaintiff and Tony Ogle. (Ogle, p. 9). Defendant owned other generators, but the only one available at Marshall at the time in question was new, had never been lifted by Plaintiff or the other workers, and was heavier than most generators. (Wineinger, pp. 20-21 & Mathews, pp. 21-22). Defendant provided Wineinger the truck with the 35-inch high bed to get the generator. (Exhibit 4 & Wineinger, pp. 23-24). Defendant did not provide equipment to move the generator from the ground to the bed of Wineinger's truck even though it knew ahead of time that generators would be needed and that such mechanical lifts could be provided. (Wineinger, p. 22, p. 31 and Ogle, pp. 27-29).

Without mechanical assistance, it was certainly foreseeable that the only men present to assist Wineinger were Ogle and Plaintiff.  (Ogle, pp. 43-44,Wineinger, pp. 6-7, p. 26 & Exhibit 4).  Further circumstantial evidence of foreseeability was Defendant's own safety rules and instructions regarding lifting.  Defendant offered programs explaining how to lift safely. (Wineinger, pp. 32-33). The programs discussed proper lifting techniques. (Wineinger, pp. 32-33). Moreover, the programs instructed its workers to use a lift or hoist if available. (Wineinger, p. 33).  A reasonable jury could therefore infer from the evidence that the injury to Plaintiff was reasonably foreseeable.

Defendant also asserts that it is entitled to judgment as a matter of law on the issue of post retirement wage loss. The seminal case regarding the collateral source rule in the context of FELA is *Eichel v. New York Cent. R. Co.*, 375 U.S. 253 (1963). In that case, the plaintiff alleged that he sustained permanent and disabling injuries as a result of his employer's negligence. The employer attempted to introduce evidence that the plaintiff was receiving disability pension payments under the Railroad Retirement Act of 1937. *Id*. at 253. The Supreme Court reasoned that the disability pension benefits could not be used to offset or mitigate the employer's damages. *Id*. The Supreme Court rejected the argument that the evidence should have been admitted to show the plaintiff's motive for not returning to work:

> In our view the likelihood of misuse by the jury clearly outweighs the value of this evidence. Insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension.

*Id*. at 255. Courts from other jurisdictions have held that such evidence is inadmissible. One case on point is *Lee v. Consolidated Rail Corp.*, 1995 WL 734108 (E.D.Pa. December 5, 1995). In that case, the plaintiff was injured in the course of his employment with Conrail. Conrail attempted to introduce evidence that under the Railroad Retirement Board's early retirement policy, the plaintiff would have been entitled to retire at age 62 with full benefits. *Id*. at *4. The Court reasoned that under Eichel and its progeny, evidence of collateral source benefits "must be categorically excluded." *Id*. at *4. Moreover, "any evidence that demonstrates alternative sources of compensation is inadmissible when a jury may use it to offset the plaintiff's damages." *Id*. at *4.

In *Page v. St. Louis Southwestern Ry. Co.*, 349 F.2d 820 (5th Cir.1965), the defendant presented evidence that the injured plaintiff was currently receiving retirement benefits under the

Railroad Retirement Act. *Id*. at 821. While the plaintiff claimed that he was not working as a result of the injury, the defendant argued he was simply malingering and would have retired even though no injury had occurred. *Id*. at 820-821. The Fifth Circuit Court of Appeals held that introducing such evidence was reversible error:

> [W]e think there is no substantial basis for distinguishing this case from Eichel and Tipton .... Both Tipton and Eichel reflect a strong policy against the use of such collateral source evidence in FELA and analogous Jones Act-maritime law seamen's cases. With the whole result in our case being the enigma wrapped in the mystery of a general verdict concealing forevermore the use or uses to which the jury might have put this evidence, we cannot say that the error, preserved by emphatic and timely objection, was harmless.

*Id*. at 822.

Finally, in *Brumley v. Fed. Barge Lines, Inc*., 396 N.E.2d 1333, 1335 (1979), the trial court excluded all evidence regarding "pension, retirement, and social security benefits plaintiff was to receive upon retirement." *Id*. at 1339. The defendant had argued that such evidence was relevant to the plaintiff's future earning capacity, and probative of the plaintiff's motivation to continue working beyond age 65. *Id*. The Appellate Court of Illinois held that the trial court committed no error:

> The same policy considerations that warrant the exclusion of disability benefits apply equally to the same controversy. The possibility of prejudice resulting from the admission of social security and retirement benefits is readily apparent. The jury could easily confuse the purpose for which such evidence was admitted.... Accordingly, the broadly based Federal policy expressed in Eichel and Tipton precluding the admission of collateral benefits in Jones Act and F.E.L.A. cases is controlling.

*Id*. at 1340. In the case at bar, Plaintiff's receipt of collateral source benefits were properly excluded. Additionally, there was sufficient evidence adduced from which the jury could

reasonably conclude that Plaintiff decided to retire as a result of his injury. Accordingly, Defendant's Motion for Judgment as a Matter of Law is DENIED.

The Court next turns to Defendant's alternative motion for new trial. Defendant's alternative motion for a new trial is governed by Fed.R.Civ.P. 59(a). "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." Federal Practice and Procedure § 2803, p. 46. A new trial may be granted "if 'the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party.' " *Frizzell v. Szabo*, 647 F.3d 698, 702 (7th Cir.2011), quoting *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 516 (7th Cir.1993). "[T]he court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61. While the district court has the power to grant a new trial on weight of the evidence grounds, such power is not unlimited. To do so, a jury's verdict must be against the "manifest weight of the evidence," which encompasses deference to the jury's conclusions by balancing "a decent respect for the collective wisdom of the jury against a duty not to approve miscarriages of justice." *Mejia v. Cook County*, 650 F.3d 631, 633 n. 1 (7th Cir.2011). The Court has already found that there was sufficient evidence for a reasonable jury to decide the way it did. Accordingly, it will limit the remainder of its analysis to the issues of prejudicial error presented by Defendant.

Defendant argues that the Court erred in allowing evidence of subsequent remedial measures; in admitting evidence that a mechanical lift or use of additional workers would have been safer; in refusing to instruct the jury on apportionment of damages; in instructing the jury on assumption of the risk; in sustaining Plaintiff's objection to cardiologist records; in permitting

8

Plaintiff's expert on lost wages to testify to opinions not disclosed until trial; and in ruling that Plaintiff's receipt of retirement benefits was inadmissible.

> Federal Rule of Evidence 407 states:
>
> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
> • negligence;
> • culpable conduct;
> • a defect in a product or its design; or
> • a need for a warning or instruction.
> But the court may admit this evidence for another purpose, such as impeachment or--if disputed--proving ownership, control, or the feasibility of precautionary measures.

The Rule specifically states that it applies "when measures are taken." In this case, there was no evidence presented that any of the suggested corrective measures were implemented, and Defendant has provided no support for its assertion that the Rule operates to exclude such evidence where corrective measures were not in fact taken. The note to Rule 407 states that the policy for excluding this sort of evidence:

> rests on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety. The courts have applied this principle to exclude evidence of subsequent repairs, installation of safety devices, changes in company rules, and discharge of employees, and the language of the present rule is broad enough to encompass all of them.

Where no remedial measures were actually implemented, the policy behind the Rule does not apply. Furthermore, the purpose for which the evidence was admitted was not a prohibited purpose. Rather, it was admitted for the purpose of impeachment and to show the feasibility of precautionary measures. Finally, even if the Court erred in admitting the evidence, Defendant has the burden of demonstrating prejudice, as well as error. *Palmer v. Hoffman*, 318 U.S. 109, 116 (1943). Here, Defendant has only made the statement that it was prejudiced without

providing any support for its assertion. Therefore, there are no grounds for a new trial as to this issue.

Defendant's next argument is that the Court erred in in admitting evidence that a mechanical lift or use of additional workers would have been safer. While, under FELA, the railroad is required to implement a reasonably safe method of work and not the best method under *Stillman v. Norfolk W. Ry.,* 811 F.2d 834, 838 (4th Cir. 1987), evidence that safer methods exist is not necessarily precluded. In *Stillman*, the plaintiff appealed and argued that the court committed error in excluding testimony concerning the use of a crane to install gears. *Id*. The appellate court noted that the district court had discretion to exclude evidence regarding the use of cranes to install gears, and any error was harmless because the plaintiff had introduced "essentially all of the testimony concerning the alternative gear installation method that he wished to offer." *Id*. Additionally, in *Sloas v. CSX Transportation,* 616 F.3d 380 (4th Cir. 2010), CSX introduced evidence that the plaintiff was contributorily negligent in failing to use available mechanical means to complete a task. It was held that such evidence was properly admitted to help establish that the plaintiff failed to appropriately utilize the safest means. *Id*. Therefore, evidence of safer mechanical means to complete a task is admissible and relevant.

Similarly, evidence that additional employees should have been utilized to lift the generator was also properly admitted. In *Heater v. Chesapeake & O Ry. Co.*, 497 F.2d 1243 (7th Cir. 1974), the court held that a reasonable jury could have inferred, based on proffered evidence that additional manpower or the use of mechanical means would have made a task safer, "that the railroad was negligent in failing to use a mechanical crane, or, at least, in failing to assign more men to the task." *Id*. In the case at bar, the admission of similar evidence was not in error.

Defendant argues that such evidence could only distract the jury, but it again fails to establish that there was any prejudice. Therefore, this argument for a new trial fails, as well.

Defendant's next allegation of error is in the Court refusing to instruct the jury on apportionment of damages given Plaintiff's pre-existing medical conditions. To win a new trial based on an erroneous jury instruction, Defendant must show that the instructions did not adequately state Seventh Circuit law and it was prejudiced by the error because the jury was likely confused or misled. *Susan Wakeen Doll Co. v. Ashton Drake Galleries*, 272 F.3d 441, 452 (7th Cir. 2001). In this case, pattern instruction 9.04 was given to the jury. This instruction is tailored to address cases involving FELA and states that a plaintiff may recover for "loss of normal life including any aggravation of a pre-existing condition . . ." This instruction is sufficient to inform the jury of the applicable law, namely that aggravation of a pre-existing condition is compensable. The non-pattern instructions submitted be Defendant and refused by the Court did not properly state the law of the Seventh Circuit, whereas the pattern jury instruction did accurately and succinctly inform the jury of the law.

Similarly, there was no error or prejudice in instructing the jury on assumption of the risk. Evidence presented at the trial, specifically in the testimony of Roy Matthews, did invite the jury to infer that Plaintiff assumed the risk of lifting the generator. Therefore, the giving of an assumption of the risk instruction was appropriate in order to correct a misimpression. *See Green v. Union Pacific R.R. Co.*, 647 N.E.2d 1092, 1099 (Ill. App. Ct. 1995).

Further, the Court did not err in sustaining Plaintiff's objection to cardiologist records from Dr. Ramesh Shatagopam or failing to allow cross examination of the Plaintiff regarding those records. While the reason for Plaintiff's retirement was disputed at trial, no evidence was presented that the cardiologist records were connected to Plaintiff's injuries. Further, Defendant

did not depose or call Dr. Shatagopam to testify at trial. Defendant also did not present any evidence that Dr. Shatagopam placed any restrictions on Plaintiff. Under those circumstances, introducing the cardiology records could only have served to confuse and mislead the jury. Accordingly, Defendant has not shown error or prejudice.

Finally, the Court did not err by permitting Plaintiff's expert on lost wages to offer new opinions at trial. Expert reports that are not disclosed must be excluded unless the proponent of the evidence can show that the failure to timely disclose was either justified or harmless. *NutraSweet Co. v. X-L Engineering Co.*, 227 F.3d 776, 785 (7th Cir. 2000). In this case, Defendant was aware from the expert's deposition that her wage loss figure would be adjusted after Plaintiff's tax returns were made available. Plaintiff's tax returns were also disclosed prior to trial. Further, the Defendant had the opportunity to cross examine Plaintiff's expert regarding her adjusted figure, and it also had the opportunity to obtain its own expert. Because the expert made it clear that her figures would be adjusted after the tax returns were available, her methodology was explained to Defendant and the tax returns were made available, the testimony regarding the adjusted figures was properly admitted.

For the reasons set forth above, Defendant's Renewed Motion for Judgment as a Matter of Law or, alternatively, for a New Trial is DENIED.

**IT IS SO ORDERED.**

**DATED: February 17, 2015**

s/ Staci M. Yandle
**STACI M. YANDLE**
**DISTRICT JUDGE**
